# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

BUFFIE M. HOLCOMB,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

No. C16-4004-LTS

**REPORT AND RECOMMENDATION**

_____

The claimant, Buffie M. Holcomb (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I.    BACKGROUND

Claimant was born in 1968 and was 46 years old at the time of the ALJ's decision. AR 39.[1] Claimant completed college and has a BA degree. *Id*. Claimant served in the Armed Forces on two occasions between 1989 and 2000. AR 357. She was medically discharged from the military due to a diagnosis of cardiomyopathy. AR 267. Since that

---

[1] "AR" refers to the administrative record below.

time, claimant has worked as a secretary, telemarketer, and order clerk. AR 21. Claimant last worked on February 21, 2014, when she was employed with the State of New Mexico in the unemployment office. AR 40. Beginning in January 2015, claimant began taking care of her 91-year-old grandmother. AR 53. The nature of this care is the central issue in this case, and I discuss it at length later.

On March 5, 2014, claimant filed an application for disability benefits, alleging disability beginning February 21, 2014.[2] AR 14, 33-34, 189, 220. Claimant claimed she was disabled due to heart abnormalities, bipolar condition, and borderline diabetes. AR 220.

On July 1, 2014, the Commissioner denied claimant's application, and on September 22, 2014, denied her request for reconsideration. AR 77, 101-103. On September 8, 2015, ALJ G. Roderic Anderson convened a hearing at which claimant and vocational expert, Theresa Wolford, testified. AR 30-63. On September 21, 2015, the ALJ found claimant was not disabled. AR 14-21. On November 24, 2015, the Appeals Council affirmed the ALJ's finding. AR 1-4. The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On January 13, 2016, claimant filed a complaint in this court. Doc. 2. The parties have briefed the issues, and on July 27, 2016, this case was deemed fully submitted. Doc. 14. On the same day, the Honorable Leonard T. Strand referred this case to me for a Report and Recommendation.

---

[2] Claimant originally alleged her disability began on May 20, 2013. AR 14. At the hearing, however, claimant amended the alleged onset date to February 21, 2014. AR 33-35.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves significant mental or physical activities. 20 C.F.R. § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. 20 C.F.R. § 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting." *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If the claimant can still do his/her past relevant work, then he/she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*,

4

353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citations omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. § 404.1545(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled. 20 C.F.R. § 404.1535.

## III. THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in his written decision.

At Step 1, the ALJ found claimant was engaged in work activity after the alleged disability onset date. Specifically, the ALJ found claimant began working as a live-in caregiver for her 91-year-old grandmother, who suffered from Alzheimer's disease, working 24 hours a day, 7 days a week. AR 16. The ALJ found claimant's last employer dismissed her when problems with claimant's pacemaker leads caused her to miss too much work, a problem which has been resolved. *Id*.

At Step 2, the ALJ determined claimant had the following severe impairments: "Chronic idiopathic dilated cardiomyopathy; congestive heart failure, class I-II; residuals of placement of a biventricular implantable cardioverter defibrillator (ICD); and obesity." AR 17. The ALJ found "[t]hese impairments interfere more than minimally with the claimant's ability to perform basic work-related activities." *Id*. The ALJ found other claimed impairments, including mental health impairments, diabetes, thyromegaly, and obstructive sleep apnea, were not severe. AR 17.

At Step 3, the ALJ determined claimant did not have an impairment or a combination of impairments which met or medically equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. AR 18.

At Step 4, the ALJ determined claimant's RFC. The ALJ found that "claimant has the residual functional capacity to perform sedentary work" with the following restrictions: "She can occasionally stoop, crouch, and kneel. She cannot crawl. She requires a controlled environment that is free of concentrated dust, smoke, and fumes. She cannot tolerate temperature extremes of heat or cold." AR 18. Based on this RFC assessment, the ALJ determined claimant was capable of performing past relevant work

as a secretary, telemarketer, and order clerk. AR 21. Accordingly, the ALJ did not reach Step 5.

## IV.   THE SUBSTANTIAL EVIDENCE STANDARD

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (internal citation omitted)).

## V. DISCUSSION

Claimant argues the ALJ's decision is flawed for three reasons:

1. The ALJ erred in determining that claimant's assistance to her grandmother as a caregiver was indicative of her ability to engage in full time employment. Doc. 12, at 4-8.

2. The ALJ erred in not giving significant weight to the disability determination from the Veteran's Administration. Doc. 12, at 8-10.

3. The hypothetical to the vocational expert upon which the ALJ relied is not substantial evidence since it failed to take into account the effects of the pain and fatigue in taking claimant off task a significant portion of the day. Doc. 12, at 10-12.

I will address these arguments separately below.

### A. *Claimant's care for her grandmother*

Claimant argues the ALJ erred at Step 1 of the analysis when he found that claimant's care for her grandmother demonstrated that claimant could engage in full-time work activity. Doc. 12, at 4-8. The ALJ found that in February 2015, claimant began working as a live-in caregiver for her 91-year-old grandmother, who suffers from Alzheimer's disease. AR 16. The ALJ found claimant worked 24 hours a day, seven days a week. *Id*. The ALJ found the work involved preparing meals; bathing, feeding, and dressing claimant's grandmother; changing linens, and doing laundry twice per week with little other family help. *Id*. Claimant argues that the care she provided her grandmother "did not require constant attention and allowed time to rest." Doc. 12, at 4. Claimant argues that the tasks she performs for her grandmother are the same that she performs for herself, and therefore, are not equivalent to work. *Id*., at 4-5. Claimant argues that the ALJ erred in weighing the work she performed for her grandmother more heavily than the opinion of a physical therapist. *Id*., at 5-7. Finally, claimant argues that the ALJ improperly weighed the state agency consulting doctors' opinions, which concluded claimant was not disabled, because those opinions were inconsistent with a physical therapist's opinion, the finding by the Veteran's Administration (VA) that claimant is disabled, and "any of the medical records." *Id*., at 7-8.

At the hearing, claimant testified that she lived with her grandmother in a two-story house. AR 40. She testified she can only walk a block before her chest starts to

hurt, and her chest hurts when she walks up and down the stairs. AR 44. She claimed to have chest pains two or three times a day, and would have to lay down on the couch until they went away. AR 45. She testified that she has to take breaks when performing "light housework" around the house. AR 51.

During the hearing, claimant described what her caregiving duties involved. She testified that she got her grandmother up in the morning and, throughout the day, helped her to the restroom. AR 52. She made all of her grandmother's meals and performed "light housekeeping." *Id*. When her grandmother had "bad days," claimant would bring her grandmother's meals to her in bed. AR 59. Claimant helped her grandmother "keep herself busy as far as like little projects, craft projects." AR 52. Claimant helped dress her grandmother. *Id*. Claimant helped her grandmother prepare for bed. *Id*. Claimant took care of administering her grandmother's medications. AR 52-53. Claimant had a monitor in her grandmother's bedroom so that when her grandmother called for her in the night, she could respond. AR 53. Claimant stated that she responded to her grandmother's calls two or three times a night. *Id*. Claimant testified that she did the laundry and changed bed linens twice a week. AR 55. Claimant did her grandmother's laundry every other day. *Id*. Claimant testified that she performed light housekeeping, but "break[s] out in a sweat and afterwards, I have to sit down for about 15-20 minutes to catch my breath." *Id*. Claimant clipped her grandmother's nails. *Id*. Claimant testified that she bathed her grandmother by preparing a bucket of water, washing her with a washcloth and soap, and then drying her off with a towel. AR 56. Claimant wiped up the floor afterwards to make sure her grandmother did not slip and fall. AR 56-57. Claimant drove her grandmother to her doctor's appointments and to perform other errands. AR 56.

Claimant testified that caring for her grandmother caused her some pain and fatigue, and that she would "sit down for a few minutes and rub my chest on the left side

and try to take a few deep breaths to get the pain to go away. And then I go and join her in the kitchen while she's doing her crafts." AR 57-58.

Claimant testified she performed all of these services for her grandmother "24/7." AR 55. Claimant stated that "once in a while" her father and aunt will relieve claimant from her caregiving duties "for about an hour." AR 57.

I find the ALJ's conclusion that claimant's full-time work as a caregiver for her ailing grandmother demonstrated claimant's ability to work a sedentary job was within the zone of choice available to the ALJ. I note, to begin with, that the ALJ did not conclude that claimant's caregiver duties rose to the level of substantial gainful activity. *See* AR 16 ("The finding of disability is based on vocational factors rather than on a finding that the claimant's current work is substantial gainful activity."). Rather, the ALJ determined that her current work demonstrated claimant's ability to perform full-time work and that "[h]er duties are the same as work on the open market." *Id*. *See Racey v. Astrue*, No. 5:12CV00036, 2013 WL 589223, at *2 (W.D. Va. Feb. 13, 2013), *report and recommendation adopted*, No. 5:12CV00036, 2013 WL 1405858 (W.D. Va. Apr. 8, 2013) (finding ALJ properly considered claimant's work tutoring children with disabilities as evidence that claimant was able to engage in substantial gainful activity). It was proper for the ALJ to consider claimant's work caring for her grandmother, even though she was not paid, because "work may be considered gainful even if no profit is realized if it is the type of work usually done for pay or profit." *Reeder v. Apfel*, 214 F.3d 984, 989 (8th Cir. 2000) (internal citation omitted). Here, claimant's round-the-clock care for her grandmother saved the family the expense that otherwise would have been incurred had the grandmother been placed in a nursing home where someone would be paid to provide the same care. *See* AR 1312 (claimant told a psychiatrist that she was taking care of her grandmother so the grandmother would not have to be in a nursing

11

home).  Accordingly, the ALJ could properly consider claimant's care-giver activities in determining that claimant was able to work a full-time job.  *See Toland v. Colvin*, 761 F.3d 931, 936 n.4 (8th Cir. 2014) (concluding "[t]he ALJ still properly considered her [part-time landscaping] work as a reflection of her physical abilities for purposes of the RFC determination."); *Johnston v. Colvin*, No. 13-CV-2710 (VEC) (FM), 2015 WL 1266895, at *2 (S.D. N.Y. Mar. 18, 2015) (finding the ALJ properly considered claimant's volunteer work and primary caregiving activities for her children in determining claimant was capable of working full-time).

Further, the ALJ's reliance on evidence of the work claimant performed was not outweighed by the opinion of claimant's physical therapist.  Claimant relies on an opinion by Tim Saulsbury, a physical therapist, who opined that claimant was unable to perform sedentary work for a full day due to pain and fatigue.  Doc. 12, at 5-8; AR 1335.  Saulsbury was not a treating medical provider; rather, he performed a consultative examination at the request of claimant's attorney.  A physical therapist is not an "acceptable medical source."  20 C.F.R. §404.1513(a).  An ALJ must consider other medical opinion evidence from health care providers who do not fall within the Commissioner's definition of an "acceptable medical source," such as physical therapists.  SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).  However, "[i]n determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record."  *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (internal citation omitted).  Here, the therapist's one-page report provides no medical evidence or observations to establish how he reached his opinion.  An ALJ may discredit the medical opinion of a not "acceptable medical source," where such opinion consists of conclusory statements.  *See Bonnell v. Astrue*, 650 F. Supp. 2d 948, 958–60 (D. Neb. 2009) (ALJ properly discounted the opinion of a

12

therapist, an 'other medical source,' where the therapist did not explain the opinion and failed to provide relevant evidence to support the opinion); *see Sloan v. Astrue*, 499 F.3d 883, 888–89 (8th Cir. 2007) (describing the nonexclusive factors, given by SSR 6-03p, for considering opinion evidence from "other medical sources" as including "[t]he degree to which the source presents relevant evidence to support an opinion; [h]ow well the source explains the opinion."). Moreover, although claimant argues that the ALJ "improperly discredited this medical test" (Doc. 12, at 5), there is no evidence the therapist conducted any medical tests.

It was also proper for the ALJ to discount claimant's subjective complaints. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (internal citation omitted). Accordingly, a court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). In assessing a claimant's credibility, the ALJ must consider "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). "An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a

whole." *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2009). The ALJ does not need to discuss each *Polaski* factor as long as he or she "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (internal citation omitted).

In this case, the ALJ concluded that "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible . . . ." AR 19. Claimant's 24/7 work taking care of an elderly grandmother was certainly relevant evidence in determining that claimant's symptoms were not as severe as she reported them to be. *See, e.g., Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (affirming ALJ's discount of claimant's subjective complaints of pain where claimant was able to care for one of his children on daily basis, drive a car infrequently, and go grocery shopping occasionally); *Miller v. Astrue*, Civil No. 09-3079, 2011 WL 776132, at *8 (W.D. Ark. Jan. 26, 2011) (finding the ALJ did not err in discounting the credibility of claimant's subjective pain complaints where the evidence showed that she served as the full-time care giver for her disabled husband).

The ALJ acted within his zone of choice as well in weighing the state agency reviewing doctors' opinions. Claimant argues these opinions were "not consistent with any of the medical records," but did not provide details or examples of alleged inconsistencies. Doc. 12, at 7. Rather, claimant simply argues they are inconsistent with the physical therapist's opinion and the VA conclusion. I have addressed the physical therapist's opinion above, and will address the VA conclusion in the next section. Here, it suffices to say that the ALJ acted reasonably in discounting the physical therapist's opinion and the VA's position.

The Commissioner argued in her brief that claimant's argument that the state agency doctors' opinions were inconsistent with the medical evidence was too conclusory to preserve error. Doc. 13, at 12 (citing *Vandenboom v. Barnhart*, 421 F.3d 745, 750

(8th Cir. 2005) ("We reject out of hand Vandenboom's conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05C because Vandenboom provides no analysis of the relevant law or facts regarding these listings.")). In her reply brief, claimant made no attempt to correct this shortcoming. Doc. 15. I have independently reviewed the state agency consulting doctors' reports and cannot find anything inconsistent with the ALJ's conclusions.

Finally, the medical evidence was consistent with the ALJ's conclusion that claimant was able to work, despite having severe impairments. Claimant had a pacemaker installed in January 2014. AR 1197. A year later, in February 2015, a doctor examined claimant and found she had unlabored breathing and a steady gait. AR 1276. In March 2015, another doctor observed that claimant "has been doing well" since the pacemaker was installed and claimant was then "asymptomatic." AR 1240-41. During that examination, claimant denied chest pains, shortness of breath on exertion, lightheadedness, or dizziness. *Id*. On April 8, 2015, another doctor concluded claimant was "reasonably asymptomatic" when claimant denied chest pain, pressure, heaviness, palpitations, or shortness of breath. AR 1329-31. She complained only of "some discomfort" at the pacemaker site "when she lies on her right side and it tugs a little bit." AR 1329. The ALJ noted that claimant was admitted to a hospital on April 10, 2015, after complaining of chest pain. AR 20. An electrocardiogram showed a paced rhythm and cardiac enzymes were normal, but claimant was admitted for cardiac monitoring and further evaluation and treatment. AR 1191. The hospital records show claimant denied "recurrent chest pain." AR 1186. The doctor found claimant's heart had a regular rate, rhythm, and heart sounds. AR 1186, 1190. Doctors concluded claimant's chest pain was not related to her heart. AR 1182-88. She was discharged on April 12, 2015, with no restrictions and with instructions to pursue a heart-healthy diet. AR 1186-87. Later in April 2015, an electrocardiogram showed claimant's left ventricle systolic function

was mildly impaired, but everything else was normal. AR 1201. X-rays showed claimant's heart was not enlarged, testing showed her cardiac enzymes were negative, and her heart rate and rhythm were normal. AR 1323-24. Another chest x-ray in April 2015 "showed no infiltrate or congestive heart failure. AR 1190. By May 11, 2015, a negative stress test showed no evidence claimant was suffering from ischemic disease causing chest discomfort. AR 1334. In short, the medical records show claimant has a history of cardiomyopathy which doctors addressed by installing a pacemaker; it appears to have worked.

Accordingly, I find that the ALJ's conclusion that claimant's 24/7 care for her grandmother demonstrated her ability to work full time was within the ALJ's "available 'zone of choice.'" *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (internal citation omitted).

### B. *The VA's determination*

Claimant argues the ALJ erred in failing to give significant weight to the Department of Veterans Affairs' (VA) disability rating of claimant. Doc. 12, at 8-10. The VA awarded claimant a 100% disability due to her cardiomyopathy. AR 357-59. The ALJ gave "some weight to the determination of the Veterans Administration (VA) that the claimant has a 100% service-connected disability in the form of cardiomyopathy." AR 20. The ALJ noted that the Commissioner is not bound by that determination. *Id*. The ALJ then concluded that "claimant's current work as a caregiver offsets the VA's finding." *Id*.

A disability determination by the VA is not binding on an ALJ considering a Social Security applicant's claim for disability benefits. *See Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996). Nevertheless, "findings of disability by other federal agencies, even

though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision." *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998). In her brief, claimant repeatedly emphasizes that the ALJ had a responsibility to consider the VA's decision and could not ignore it; but, the ALJ, here, clearly did not ignore it and did consider the VA's decision and did give it some weight. AR 20. Claimant cites cases from other circuit courts of appeal for the proposition that VA disability ratings should be given "great weight" or "substantial weight." Doc. 12, at 9. That is not, however, the law in this circuit. Rather, in the Eighth Circuit, an ALJ must consider the agency determination and give it "some weight." *Morrison*, 146 F.3d at 628. That standard is reasonable because, as the Commissioner points out, the standards are different; the VA does not take into account the person's ability to work, while the Commissioner does. Doc. 13, at 15 (citing UMAR MOULTA-ALI, CONG. RESEARCH SERV., R41289, DISABILITY BENEFITS AVAILABLE UNDER THE SOCIAL SECURITY DISABILITY INSURANCE (SSDI) AND VETERANS DISABILITY COMPENSATION (VDC) PROGRAMS (2012)).

Therefore, I find the ALJ did not err in the manner in which he considered and weighed the VA's disability determination.

### C. *The hypothetical question to the VE*

Claimant argues that the ALJ erred in relying on the vocational expert's opinion because the hypothetical question he posed failed to take into account claimant's pain and fatigue. Doc. 12, at 10-12. The ALJ posed the following hypothetical question to the vocational expert:

> Now given Ms. Holcomb's age of 46 years with a high school plus four years of post secondary education and experience as stated in her testimony and the file you have received, assuming the following limitations, would she be able to perform her past work?

> Able to perform sedentary work. Lifting no more than 10 pounds occasionally, carrying 10 pounds frequently. Sitting six hours out of an eight-hour day. Standing two hours out of an eight-hour workday.
> No climbing of stairs or ladders. Only occasional stooping. No crawling, but occasional crouching and kneeling. Controlled environment free of dust and fumes and no temperature extremes in the hot/cold range. Would she be able to return to any of her past work?

AR 61. The vocational expert responded affirmatively, stating that claimant could work as a secretary, telemarketer, and an order clerk as they are generally performed in the economy. *Id*. The ALJ expanded the hypothetical question and asked the vocational expert to assume that claimant would need to rest 25% of the work day, in response to which the expert testified claimant could not return to past relevant work. AR 61-62.

"Hypothetical questions [to vocational experts] should set forth impairments supported by substantial evidence on the record and accepted as true, and capture the concrete consequences of those impairments." *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007) (internal quotations marks, alterations, and citations omitted). *See also Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."). An ALJ may exclude any alleged impairments the ALJ has properly rejected as untrue or unsubstantiated. *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997). Therefore, "[t]estimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Tucker v. Barnhart*, 363 F.3d 781, 784 (8th Cir. 2004) (citing *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996)). Stated conversely, "hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994) (internal citation omitted).

Claimant argues the ALJ should have credited claimant's testimony that she suffered chest pains and fatigue and needed frequent rest, and should have credited the opinion of the physical therapist. Doc. 12, at 11-12. Claimant argues that had the ALJ included those limitations, reflected in the need to rest 25% of the time, then the vocational expert would have determined claimant was not able to return to past work. *Id*. As noted, however, the ALJ found claimant's description of the severity of her symptoms was not fully credible. AR 19. The ALJ provided a sufficient basis for making that credibility finding. Further, it was not unreasonable for the ALJ to reject the conclusory opinion of the physical therapist, for the reasons I previously discussed. Given that, the ALJ could properly rely on a hypothetical that did not include claims he found were not credible and unsubstantiated.

Accordingly, I find the ALJ did not err in posing the hypothetical question to the vocational expert and relying on her opinion.

## *VI. CONCLUSION*

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal

from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 26th day of October, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa